UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 21bk08123 |
| | ) | |
| Northwest Bancorporation of Illinois, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

The matter before the court comes on for consideration on the Reorganized Debtor's Motion to Reopen Chapter 11 Case [Dkt. No. 394] (the "<u>Motion to Reopen</u>"), filed by Northwest Bancorporation of Illinois, Inc. ("<u>NWBC</u>") in the above-captioned bankruptcy case. On December 19, 2025, when the Motion to Reopen was filed, without waiting for ruling on the Motion to Reopen and without leave of the court, NWBC also filed the complaint the Motion to Reopen seeks leave to commence. Complaint [Dkt. No. 396] (the "<u>Complaint</u>"). The filing of the Complaint automatically commenced the adversary proceeding styled as *Northwest Bancorporation of Illinois, Inc. and First Bank and Trust Company of Illinois v. Robert Hershenhorn*, Adv. Pro. No. 25ap00400 (the "<u>Adversary Proceeding</u>").

The Motion to Reopen was first considered by the court at a hearing on January 6, 2026, and later at a hearing on January 13, 2026, at which later hearing NWBC was ordered to provide supplemental briefing on the court's authority to hear and the propriety of hearing the matter addressed in the Complaint. *See* [Scheduling] Order [Dkt. No. 399]. No parties other than NWBC appeared at either of these initial hearings.

On January 23, 2026, NWBC filed the supplemental briefing ordered by the court. Brief in Support of Reorganized Debtor's Motion to Reopen Chapter 11 Case [Dkt. No. 400] (the "<u>Brief in Support</u>"). On January 30, 2026, counsel to Robert Hershenhorn ("<u>Hershenhorn</u>"), the target of the Adversary Proceeding, filed an unsolicited Statement of Robert Hershenhorn Regarding Post-Confirmation Jurisdiction and Non-Consent [as amended, Dkt. No. 403] (the "<u>Statement in Opposition</u>").

The parties appeared before the court on February 10, 2026 (the "<u>Hearing</u>"). At the Hearing, the court heard oral arguments from the parties. The court then took the Motion to Reopen under advisement, setting a later hearing for March 31, 2026, and continuing that hearing ultimately to May 5, 2026, for ruling should the court not rule prior to that time.

For the reasons more fully set forth below, the Motion to Reopen will be denied and the Adversary Proceeding will be dismissed.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code.[1]  28 U.S.C. § 1334(a).  The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy judges for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court may hear the matters but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1), (c).  Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 464 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter.  *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough.").

The specific jurisdictional issue presented here is, however, more nuanced.  It will be addressed below as the court analyzes the appropriateness of NWBC's requests.

BACKGROUND

The Motion to Reopen seeks authority to reopen the above captioned case (the "2021 Case") in order to permit NWBC to bring and prosecute the Adversary Proceeding.  The Adversary Proceeding, in turn involves allegations of the actions and inactions of Hershenhorn, such actions occurring in the 2021 Case and prior to it and stemming from a prior case under chapter 11 of the Bankruptcy Code styled as *In re Northwest Bancorporation of Illinois, Inc.*, Case No. 15bk15245 (Bankr.

---

[1]      11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  Throughout this Memorandum Decision, the court may also make reference to the Federal Rules of Civil Procedure (the "Civil Rules" and, as to each, "Civil Rule ___") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and, as to each, "Bankruptcy Rule ___").

N.D. Ill. case commenced April 29, 2015) (the "2015 Case" and, together with the 2021 Case, the "Bankruptcy Case").

The claims against Hershenhorn involve multiple entities and varying degrees of interrelatedness between them. NWBC is a bank holding company with a wholly owned operating subsidiary, First Bank and Trust Company of Illinois ("First Bank"). First Bank operates as a full service, commercial bank in Illinois. NWBC is the sole shareholder of First Bank. Hershenhorn was the sole prepetition shareholder and a member of the board of directors of NWBC, as well as the chairman of First Bank's board of directors.

At some point in the 2021 Case, AmeriNational Community Services, LLC ("AmeriNat"), to help restructure NWBC's balance sheet and acquire ownership of it, purchased certain claims held by various creditors of NWBC. As a result, AmeriNat became one of the largest creditors of NWBC.

During the 2021 Case, a chapter 11 trustee (the "Trustee") was appointed. Order Approving the Appointment of a Chapter 11 Trustee [Dkt. No. 155]. The Trustee and AmeriNat acted together as the plan proponents and caused the Amended Joint Chapter 11 Plan of Reorganization Proposed by the Trustee and AmeriNational Community Services, LLC [Dkt. No. 232] (as modified, the "Plan") to be filed. On May 12, 2023, the court confirmed the Plan. Order Approving Disclosure Statement and Confirming Plan [Dkt. No. 299] (the "Confirmation Order").[2]

While the Plan sets forth two means for implementation, either a "Reorganization Transaction" or a "Sale Transaction," Plan, at Art. IV, the Plan was implemented through the Reorganization Transaction. As a result of the Reorganized Transaction, AmeriNat acquired and is now the holder of 100% equity in NWBC. AmeriNat also assumed rights to all property of the estate in the 2021 Case, including causes of action. As a result, AmeriNat holds all equity in NWBC and operates both NWBC and First Bank.

On March 19, 2025, the court entered the Order for Final Decree [Dkt. No. 391] and the 2021 Case was closed the next day. Nine months later, NWBC filed the Motion to Reopen and the Complaint.

DISCUSSION

At its core, the issue presented by the Motion to Reopen is simple. Should the court permit NWBC to reopen the 2021 Case so as to pursue its alleged claims against Hershenhorn?

A.   The Motion to Reopen

As the Seventh Circuit has made clear, "[t]he decision to reopen a bankruptcy case is within the broad discretion of the bankruptcy court." *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010). The Seventh Circuit made clear that,

---

[2]   The 2015 Case was heard by another judge of this court. Prior to the 2021 Case's assignment to the undersigned upon that judge's retirement, so too was the 2021 Case.

In exercising its discretion to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *In re Stark,* 717 F.2d 322, 323 (7th Cir.1983) (*per curiam*). The trend in reopening cases … has thus been "to allow the bankruptcy judge broad discretion to weigh the equitable factors in each case." Michael P. Saber, *Section 350(b): The Law of Reopening,* 5 Bankr.Dev.J. 63, 82 (1987) (collecting cases).

*In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991); *see also In re Harvey*, Case No. 18-13398-7, 2025 WL 2484598, at *3 (Bankr. W.D. Wis. Aug. 28, 2025). That said, the discretion is not limited. It is guided by the statute and other applicable law. *See In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002) (noting that the use of the power to reopen "is reserved for matters such as the correction of errors, amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge." (citations omitted)).

The statute in question is section 350 of the Bankruptcy Code, which states that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

As to case law, in addition to *Redmond, Zurn* and *Shondel*, there are, in fact, quite a number of Seventh Circuit decisions on section 350. *See, e.g., Brown v. UAL Corp. (In re UAL Corp.)*, 809 F.3d 361 (7th Cir. 2015); *Richards v. Stevens*, 310 F. App'x 898 (7th Cir. 2009); *In re Bianucci*, 4 F.3d 526 (7th Cir. 1993).

Rather than these cases, the Motion to Reopen primarily relies on the prior decision of this court regarding reopening which underlies *Redmond. In re Redmond*, 380 B.R. 179 (Bankr. N.D. Ill. 2007) (Wedoff, J.), *subsequently aff'd sub nom. Redmond v. Fifth Third Bank*, 624 F.3d 793 (7th Cir. 2010). This is likely because *Redmond* provides a list of criteria to consider, whereas the other cases address individual issues raised within them.

The arguments of NWBC in the Motion to Reopen and the Brief in Support can be broken down into four main points.

First, NWBC argues that the bankruptcy court has "related to" subject matter jurisdiction to hear the claims against Hershenhorn because subject matter jurisdiction over the claims existed prior to confirmation. As the Trustee could have brought the claims for breaches of fiduciary duty against Hershenhorn prior to confirmation, NWBC concludes that the court continues to have subject matter jurisdiction over them postconfirmation.

Second, NWBC states that the claims against Hershenhorn were expressly reserved and preserved in the Plan for AmeriNat's benefit. Under the Reorganization Transaction, all property of the estate, including all causes of action, vested in NWBC and the Plan expressly preserved the right to commence and pursue estate causes of actions, including breaches of fiduciary duty against insiders.

Third, NWBC argues that the claims against Hershenhorn impact the value of AmeriNat's distribution and recovery as a creditor under the Plan. The prosecution of such claims, therefore, conveys upon the court "related to" jurisdiction. NWBC argues that AmeriNat considered the value of those claims in jointly proposing the Plan, voting to accept the Plan and consummating the

4

Reorganization Transaction.  Because the claims against Hershenhorn are linked to the value AmeriNat received under the Plan, they impact the value of NWBC.

Finally, NWBC argues that the claims against Hershenhorn are most appropriately brought in this court, primarily because this court is familiar with the history of the parties' dealings.

While Hershenhorn was not included in the briefing on this matter, he nonetheless submitted the so-called Statement in Opposition.  Among the various arguments made by Hershenhorn, the only one of value to the court in this determination is that Hershenhorn expressly states that he does not consent to the entry of final orders or judgment by the bankruptcy court.

As noted above, a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  The court will consider each element of section 350, in turn.

i.     *Administration of Assets/According Relief to the Debtor*

Here, while they are separate elements in the statute, administration of assets and according relief to the Debtor are, in their operation, the same standard.  The only relief NWBC seeks is the use of the bankruptcy court as a forum to pursue its state law claims against Hershenhorn, and it does so under the guise of administration of the assets of NWBC's bankruptcy estate.

Together, these elements align most closely with the second and third of NWBC's arguments, that the claims against Hershenhorn were expressly reserved and preserved in the Plan for AmeriNat's benefit and that recovery on such claims is part and parcel to AmeriNat's recovery as a creditor in the Plan.

The problem with this argument is that it is never-ending.  Under the Plan, the claims in question were preserved for NWBC, not AmeriNat.  Plan, at Art. IV.E.  The Plan vests the assets of the estate in NWBC, not AmeriNat.  *Id.*  The value of AmeriNat's recovery as a creditor in the case is tied to the success of NWBC, to be sure, but AmeriNat has already received its recovery by way of ownership of NWBC.

As the Seventh Circuit has stated, "[o]nly a belief that bankruptcy is forever could produce a case such as this."  *Pettibone Corp. v. Easley*, 935 F.2d 120, 121 (7th Cir. 1991).  It has made clear that the success or failure of a reorganized debtor does not convey on the bankruptcy court a continuing role in hearing and determining that reorganized debtor's legal disputes.  *Zurn*, 290 F.3d at 864.  In *Zurn*, it stated that the debtor's "belief that anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding is incompatible not only with *Pettibone* but with many other cases …."  *Id.* at 864.

Putting a finer point on it, the court in *Zurn* stated that:

Suppose that a Chapter 13 plan called for a debtor to pay in full for a car, and thus retain title, and that after the confirmation of the plan a warranty dispute occurred. Would the bankruptcy judge be called on to determine whether the car's transmission had been repaired to the debtor's satisfaction?  Certainly not; the federal role ended with the decision that the car would be paid for and retained rather than abandoned. Other disputes concerning the car belong to state tribunals.  So too with leaseholds,

5

we held in *Chicago, Rock Island & Pacific*. Zurn conceded at oral argument that disputes of this kind could not be brought back to federal court but argues that her dispute differs because the state litigation was ongoing at the time of the federal bankruptcy. But that was equally true in *Pettibone*, where the bankruptcy court abstained and left resolution of the parties' dispute to state tribunals. After the bankruptcy ended, the parties could not agree on the effect in the state cases of the automatic stay in bankruptcy; even though this dispute (unlike the Zurn–Botti imbroglio) was related to federal law, we held in *Pettibone* that jurisdiction once relinquished *stays* relinquished. When a bankruptcy court abstains and permits state courts to handle pending litigation, the parties must thereafter look to the state courts to handle their *complete* dispute and may not drag selected issues back to the bankruptcy forum years later.

*Id.* (emphasis in original) (citing to *In re Chicago, Rock Island & Pacific R.R.,* 794 F.2d 1182, 1186–87 (7th Cir.1986)).

Here, true, the Plan does provide lingering federal interest. But only a scant one. There is no compelling reason to have the administration of these state law claims here. As discussed below, NWBC will not be harmed in any way by having its actions heard in the appropriate forum.

ii.    *Other Cause*

While the first two factors of section 350(b) are more clearly defined, "other cause" is not. As the Seventh Circuit has stated,

The Bankruptcy Code does not define "other cause." A decision to reopen a case for "other cause" lies within the discretion of the bankruptcy court and will be reversed only for an abuse of that discretion. *See, e.g., Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 (4th Cir.1984); *In re Thomas,* 204 F.2d 788, 791 (7th Cir.1953).

*Shondel*, 950 F.2d at 1304; *see also Harvey*, 2025 WL 2484598, at *3. Even under prior versions of the Bankruptcy Code, courts dealt with the question of what constitutes "cause" to reopen a case. *See, e.g., Thomas v. Lurie et al. (In re Thomas)*, 204 F.2d 788 (7th Cir. 1953) (discussing the ability to reopen cases "for cause shown" under the Bankruptcy Act of 1938).

A starting point, because "for other cause shown" is general and follows more specific factors set forth in section 350(b), is to apply the maxim of *ejusdem generis*. The statutory canon is "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (citation omitted). Courts have applied the maxim of *ejusdem generis* to other sections when interpreting statutory lists with similar "catchall" provisions. *See, e.g., Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 217 (2024) ("[T]he catchall [provision of section 1123(b)(6)] must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it.") (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512 (2018)).

For there to be "other cause" to reopen a bankruptcy case there must be a reason similar in nature to, but separate from, the first two factors set forth in section 350(b). "[A]t a minimum, there must be some bankruptcy-related reason to reopen the case." *In re Archdiocese of Milwaukee*, 663 B.R.

6

897, 910 (Bankr. E.D. Wis. 2024).  For instance, reopening a bankruptcy case is not warranted when the "amount of a given claim" is affected and not the plan's provisions for satisfying claims." *Zurn*, 290 F.3d at 864.  Specifically, "Zurn's plan promised payment in full; and if events mean that 'in full' is less than the debtor anticipated, still this does not call the plan itself into question.  It just provides an occasion for the use of whatever remedies Zurn has under state law." *Id.*

As stated above, NWBC relies on this court's underlying decision in *Redmond* to argue why the case should be reopened for cause under section 350(b).  *Redmond* quotes to an out-of-circuit bankruptcy case to summarize a non-exclusive list of six factors the bankruptcy court can consider in determining whether to reopen a closed case.  *Redmond*, 380 B.R. at 185 (quoting to *In re Antonious*, 373 B.R. 400, 405–06 (Bankr. E.D. Pa. 2007)).  Still, the court in *Redmond* only analyzed three factors and, in turn, the Seventh Circuit reviewed and affirmed based on those same three factors.  The remaining three factors referenced but not analyzed in *Redmond* would be no more germane here as they were in *Redmond* and are similarly not reviewed.

Three factors considered in the determination to reopen a case are therefore:  "(1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims." *Redmond*, 624 F.3d at 798; *see also Imler v. Combs-Skinner*, 465 F. App'x 552, 554 (7th Cir. 2012) (same).

> These factors balance two realities—first, that bankruptcy courts have expertise, both in the law governing bankruptcy cases and in the details of the cases before them, and second, that bankruptcy courts are courts of limited jurisdiction that exist parallel with other, often state courts, equally capable of addressing disputes.

*In re Servin*, Case No. 16 B 39971, 2025 WL 863298, at *2 (Bankr. N.D. Ill. Mar. 18, 2025) (Slade, J.).

The first factor, timeliness, does not have a strong impact on the analysis here and does not, on its face, weigh either for or against reopening.  *See Bianucci*, 4 F.3d at 529 (finding that a case may not be reopened if there had been an "inordinate length of time" in the motion being brought).  The two remaining factors are entitlement to relief and the availability of nonbankruptcy courts to entertain the claims.

a.     <u>Entitlement to Relief</u>

As to the entitlement to relief, which goes to the validity of the underlying claims, the purpose of this consideration appears to be preventative.  This factor would prevent courts from reopening cases "where it appears that to do so would be futile and a waste of judicial resources." *Redmond*, 624 F.3d at 803.

The problem with this factor in the present circumstance is that it circles back on jurisdiction, one of the ultimate questions before the court.  In order for NWBC to be entitled to the relief it seeks in the Adversary Proceeding, this court must have jurisdiction to afford that relief.  Put in the terms of *Redmond*, if the bankruptcy court cannot properly hear the claims being pursued then it would be a waste of judicial resources to reopen the case.

7

On this point, NWBC takes the position that, while it does not arise in or under the Bankruptcy Code, or in a case under the Bankruptcy Code, the underlying causes of action are related to the Bankruptcy Case. 28 U.S.C. § 1334(b). "Related to" jurisdiction "is how most non-bankruptcy issues, such as tort and contract disputes, come within a bankruptcy judge's powers." *Bush v. United States*, 100 F.4th 807, 811 (2024). It is a question of whether "the dispute is 'related to' the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). As the Seventh Circuit stated in *Xonics*, "[t]he bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose." *Id.* at 131. The purpose is for the resolution of the underlying suit to have a direct and substantial impact on the asset pool available for distribution to the creditors. *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990).

The Seventh Circuit has interpreted the "related to" language of section 1334 narrowly and articulated a helpful definition for bankruptcy courts in this circuit to determine whether such jurisdiction exists. "[A] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (quoting *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991)). As the Seventh Circuit explained in a prior case in declining to permit a bankruptcy asset purchaser to use the bankruptcy court to address products liability suits relating to the purchased assets,

> [T]he language should not be read so broadly. The reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.

*Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994) (citing *Xonics*, 813 F.2d at 131).

Though other circuits have adopted a broader test for determining "related to" jurisdiction known as the *Pacor* test, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (collecting cases); *see Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) ("whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*") (emphasis in original) (citations omitted), the narrower interpretation of "related to" jurisdiction in the Seventh Circuit is "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *FedPak Sys.*, 80 F.3d at 214.

As a result, "[o]verlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989). A nexus to the bankruptcy case is not enough if it does not have a financial effect on the estate or allocation among creditors. *Id.*

Here, NWBC has failed to show how the outcome of the underlying allegations in the Complaint will affect the amount of estate property to be distributed to creditors or the allocation of that property among creditors. As the Plan sets the recoveries in question and as success in the

Adversary Proceeding will not change those recoveries, only the putative, postconfirmation value of the recovery AmeriNat received through its 100% ownership of NWBC, this has neither an effect on the bankruptcy estate nor the allocation of property among creditors.

There are surely other matters that can make AmeriNat's ownership of NWBC more or less valuable as well. The bankruptcy court simply cannot be the forum to hear each and every one of those issues. What distinguishes this is only that the choses in action in question existed at the time the Plan was confirmed and were preserved for NWBC in the Plan. Bankruptcy law and this court are otherwise not involved.

Given the tenuous nature of this court's jurisdiction over the dispute, there is not enough here to compel this court to exercise its jurisdiction in NWBC's favor. As a result, this factor weighs against reopening.

>
>b.      Availability of State Court

As to availability of non-bankruptcy courts, it is clear that the underlying issue is nothing more than a question of state law and merely contains facts embedded, in part, in the Bankruptcy Case. Both counts of the Complaint seek damages and relief in accordance with violations of state law, specifically 805 ILCS 5/8.60. In fact, overriding state law issues is the reason bankruptcy courts permissively abstain from hearing certain matters. *See In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) (finding that the presence of a state law issue is a significant consideration to warrant permissive abstention).

The argument by NWBC that this court is the appropriate forum because it is familiar with the history of the parties' dealings is belied by the facts. This court is no more familiar with the history of the parties' dealings than another judge would be. The causes of action are about corporate governance, not about bankruptcy. Further, the acts in question, to the extent they occurred during the Bankruptcy Case, happened prior to reassignment of the case to the undersigned. *See* [Reassignment] Order [Dkt. No. 303]. In addition to the foregoing, Hershenhorn intends to demand a jury trial. While this court has jurisdiction to preside over jury trials under certain circumstances that do not appear to exist here, 28 U.S.C. § 157(e), it does not regularly do so. Courts of general jurisdiction routinely preside over jury trials and are equipped for the effort and time it takes. As such, the undersigned is no better position to know the facts or preside over the action than another court, including state courts.

Not only are NWBC's claims better heard in a court of general jurisdiction, but they must ultimately be determined in such a court, even if this court were to hear the Adversary Proceeding. Bankruptcy judges have a limited ability to enter final judgments. 28 U.S.C. § 157(b)–(c). As the matter raised in the Adversary Proceeding is not a core proceeding arising in a case under the Bankruptcy Code or arising under the Bankruptcy Code, the bankruptcy court therefore has no statutory authority to enter final judgment on the Complaint absent consent of the parties. *See Wellness*, 575 U.S. at 669; *Richer*, 798 F.3d at 490. While it could hear the matter, it would have to transmit its recommendations to the District Court which, in turn, could determine the matter *de novo*. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(c); *Diamond Mortg.*, 913 F.2d at 1238.

Hershenhorn expressly and unequivocally does not consent to final adjudication of the matters in the Complaint by the bankruptcy court. The record reflects Hershenhorn's consistent

objection to the bankruptcy court hearing the Complaint. Without consent by Hershenhorn to the jurisdiction of the bankruptcy court to resolve the dispute between it and NWBC, at best this court can only submit to the District Court a proposed findings of fact and conclusions of law.

This means that the District Court, which has no prior experience with the Bankruptcy Case, would ultimately have to render judgment in this matter. This puts paid to any argument by NWBC that this court is better suited to hear this matter and bringing the matter before this court promotes judicial efficiency. This court is simply nothing other than a forum of convenience for NWBC and inconvenience for Hershenhorn.

The availability and necessity of nonbankruptcy courts to hear and determine this matter therefore weighs against reopening the bankruptcy case.

iii.        *Retention of Jurisdiction Provision(s) in the Plan*

As a final point, NWBC also argues its ability to bring the claims against Hershenhorn in the bankruptcy court were expressly preserved and reserved under the Plan and that such provisions in the Plan and Confirmation Order might make a state court hesitant or unwilling to hear the claims against Hershenhorn. While such provisions are problematic, to be sure, they do not operate as a bar in the manner NWBC presumes.

The effect of confirmation of a chapter 11 plan is that "the provisions of a confirmed plan bind the debtor … any entity acquiring property under the plan, and any creditor …." 11 U.S.C. § 1141(a). In effect, a confirmed plan is "a contract between the parties and the terms of the plan describe their rights and obligations." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002).

As a result, a confirmed plan binds the parties contractually. *In re Harvey*, 213 F.3d 318, 320 (7th Cir. 2000) ("[B]ankruptcy plans are to be treated as contracts and interpreted under state law ...."); *In re Kimball Hill, Inc.*, 620 B.R. 894, 902 (Bankr. N.D. Ill. 2020) (Barnes, J.), *aff'd sub nom. Fid. & Deposit Co. of Maryland v. TRG Venture II, LLC*, Case No. 20 C 6105, 2022 WL 952737 (N.D. Ill. Mar. 30, 2022), *aff'd sub nom. In re Kimball Hill, Inc.*, 61 F.4th 529 (7th Cir. 2023) (same). Even a plan confirmed in error may be binding in some circumstances. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).

That said, bankruptcy courts cannot retain what they do not have. The bankruptcy courts' subject matter jurisdiction is statutory and comes from sections 1334 and 157, not what the terms of a contract may say. To hold otherwise would be to allow a bankruptcy court to confer upon itself more than the statute permits. Put another way, "[a] court cannot write its own jurisdictional ticket." *Zerand-Bernal Grp.*, 23 F.3d at 164; *see also Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663 (1st Cir. 2017) ("[A] bankruptcy court may not 'retain' jurisdiction it never had—*i.e.*, over matters that do not fall within § 1334's statutory grant.") (citing *Celotex*, 514 U.S. at 307); *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586 (7th Cir. 2005) (noting the concurrent jurisdiction between state courts and bankruptcy courts on certain matters).

The bankruptcy court cannot therefore confer upon itself exclusive jurisdiction. If the bankruptcy court has jurisdiction, then it may be possible to retain said jurisdiction. If that jurisdiction was exclusive, it might remain so. That is not the ability to confer upon itself exclusive

jurisdiction, however, on a matter shared with the courts of general jurisdiction. *See Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Ent. Corp.*, 249 B.R. 879, 886 (N.D. Ill. 2000) ("Moreover, when a bankruptcy court retains jurisdiction over a certain dispute, it does not divest any other court of concurrent jurisdiction …. [E]specially suits that arise under state law.").

Here, the confirmed Plan contains express language to reserve the right of NWBC, and by virtue of the Plan AmeriNat, to bring the causes of action against Hershenhorn. The Plan vested all property in the estate, including all "Causes of Action," in NWBC. Plan, at Art. IV.E. The retained "Causes of Action" is defined broadly by the Plan to include "all Claims, demands, rights, actions, causes of action, and suits of the Debtor or the Estate … including … such Claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends … [and] any other Claims which may be asserted against … insiders." Plan, at Art. I.A.11. The Plan then expressly provides for the bankruptcy court to "retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Amended Plan[.]" Plan, at Art. X.

While this surely reads as this court retaining exclusive jurisdiction over matters such as that brought in the Adversary Proceeding, for the reasons set forth above, that simply cannot be what occurred. A state court might, as a result of this language, be reluctant to hear the matter, to be sure. But that is easily handled here. Nothing that occurred in the Bankruptcy Case prevents a state court from hearing the claims against Hershenhorn. As a result, this provision does not compel the court to exercise its discretion and grant the Motion to Reopen.

B.      The Adversary Proceeding

While the issue before the court arises out of the Motion to Reopen filed in the 2021 Case, the Adversary Proceeding remains pending. Its continued existence is dependent on the Motion to Reopen. At the court's direction, all deadlines within the Adversary Proceeding have been held in abeyance pending a ruling on the Motion to Reopen.

The treatment in the Adversary Proceeding would seem straightforward. Civil Rule 12(h)(3) expressly states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. Rule. Civ. P. 12(h)(3).

As noted above, this court's jurisdiction over the Adversary Proceeding is, at best, related to jurisdiction. Regarding related to jurisdiction, the Seventh Circuit has made clear, stating that:

> The bankruptcy proceeding having ended, the adversary proceeding became a dispute of no interest to anyone except the two adversaries, and their dispute revolved entirely around the meaning of a pair of state judgments. There was not even a remote federal interest. …. There was no reason to retain the adversary proceeding in federal court, and the judgment dismissing the proceeding without prejudice is therefore affirmed.

*Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 82 (7th Cir. 1995); *see also Porges v. Gruntal & Company, Inc. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995); *Paul et al. v. Yakubova (In re Yakubova)*, Case No. 24-10600 (PB), 2026 WL 1009835, at *6 (Bankr. S.D.N.Y. Apr. 14, 2026).

Such is the case here. This court routinely dismisses adversary proceedings with no independent federal subject matter jurisdiction when it dismisses the bankruptcy case in which the

11

adversary proceeding arose.  *Kelly v. Herrell*, Case No. 21-2442, 2022 WL 17851675, at *4 (7th Cir. Dec. 22, 2022) ("[W]e note that courts may, in their discretion, dismiss adversary proceedings after the underlying bankruptcy case has ended." (citing to *Chapman*, 65 F.3d at 80–82)); *Specialty Contents Grp., LLC v. Service247 of Illinois, Inc.*, Case No. 24 C 4415, 2024 WL 4818438, at *2 (N.D. Ill. Nov. 18, 2024), *reconsideration denied,* Case No. 24 C 4415, 2025 WL 2693855 (N.D. Ill. Sept. 22, 2025) (same).  The result should be no different upon denial of a motion to reopen.  The court will therefore, concurrently with this Memorandum Decision and order denying the Motion to Reopen, enter a judgment dismissing the Adversary Proceeding without prejudice.

CONCLUSION

For the reasons stated above, the Motion to Reopen will be denied by separate order entered concurrently herewith.  By separate judgment also entered concurrently herewith, the Adversary Proceeding will be dismissed without prejudice.

Dated:  May 4, 2026                     ENTERED:

Judge Timothy A. Barnes
United States Bankruptcy Court